D. S. CAGE, The (BROWN v.). See Case No. 2,002.

## Case No. 4,099.

### The D. S. GREGORY.

[2 Ben. 166.][1]

District Court, S. D. New York. Feb., 1868.[2]

COLLISION IN NEW YORK HARBOR — VESSEL AT ANCHOR—FOG—SPEED OF FERRYBOAT.

1. Where a steamer, coming into New York harbor in a fog, was anchored by the pilot in charge of her about opposite to the slip of a ferry, coming to anchor there because the river was full of vessels, and her position was known to those on board of a boat plying on such ferry, and she sounded her whistle at proper intervals, and rang a bell, and used all proper precautions to make her position known, and, about nine o'clock the next morning, the fog still continuing, she was run into by such ferryboat: Held, that, on the evidence, it was not a fault in the steamer, contributing to the collision, to anchor where she did, and keep her anchorage during the fog.

2. The fact that the ferryboat collided, in a fog, with a vessel at anchor, which used all proper precautions to give notice of her position, it being already known to the ferryboat that she was at anchor there, was sufficient evidence that the speed of the ferryboat was too great, there being no special circumstances to justify her maintaining the speed she did. Held, that the ferryboat was, therefore, liable for the damages.

[Cited in The Louisiana, Case No. 8,537; The Atlas, Id. 633; The Colorado, Id. 3,028; The Hansa, Id. 6037; The City of Panama, Id. 2,764; The City of New York, 15 Fed. 629; The Alberta, 23 Fed. 812.]

This was a libel by Alfred Holt and others, owners of the steamship Talisman, to recover for a collision which took place about nine o'clock on the morning of the 15th of January, 1863, in the Hudson river, between the city of New York and Jersey City, between the steam ferryboat D. S. Gregory and the steamship Talisman. The Talisman was at anchor. She had come in from sea during the previous afternoon, and had then anchored nearly in the middle of the Hudson river, about opposite to the foot of Courtlandt street in the city of New York. The D. S. Gregory plied regularly between the foot of Courtlandt street and a slip in Jersey City nearly opposite. The Talisman came in during a very thick fog, which continued all through the night, and down to the time of the collision. She anchored where she did because the river was full of vessels, moving and at anchor, and a collision with some of them was feared if she proceeded further. She was anchored under the direction of the pilot who brought her in from sea. The position of the Talisman at her anchorage was known to those in charge of the D. S. Gregory, and they saw her after she had taken up her anchorage. Her position was not substantially changed down to the time of the collision. At that time she was headed up the river, the tide being ebb. She blew her steam whistle at proper intervals before and down to the time of the collision, and also sounded her bell,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 4,102.]

and used all proper precautions to make known her position. The D. S. Gregory was on a trip from Jersey City to her berth at New York, and came in contact, during the fog, with the Talisman, on the port side of the latter, and damaged her seriously.

D. D. Lord, for libellants.

E. S. Van Winkle, for claimants.

BLATCHFORD, District Judge. The answer sets up that it was a fault in the Talisman to anchor where she did in the fog, it being claimed that her anchorage place was in the line of the usual path of the ferryboat. I do not think, on the evidence, that it was a fault contributing to the collision, in the Talisman, to anchor where she did, and keep such anchorage during the fog. I regard the Talisman as wholly free from fault, so far as the collision is concerned. The only question, therefore, is whether the D. S. Gregory was in fault in coming into collision with this vessel at anchor; and it is impossible to resist the conclusion that she was. Her rate of speed was too great. No positive rate can be prescribed. What would be a moderate rate of speed under one state of facts, would be an immoderate one under another. A steam vessel must, in a fog, reduce her rate of speed to a moderate rate, or abide the consequences of an immoderate one, unless some special reason is shown for maintaining the rate of speed adopted. The fact that the D. S. Gregory, while under way in a fog, collided with a vessel at anchor, which used all proper precautions to give notice of her position (it being already known to the D. S. Gregory that she was at anchor there), is sufficient evidence that the speed of the D. S. Gregory was not moderate, there being no special circumstances existing in the case to justify her maintaining the rate of speed she did. And this is true, without regard to what her actual rate of speed was, and without regard to the question whether she did or did not slow, stop, and back before the collision, and without regard to the question whether the manoeuvres she made at the moment of collision were or were not correct. The collision resulted from her coming in contact, while under way, with the vessel that was at anchor, and was a consequence of the speed at which she was moving. In such a fog, her speed ought to have been as much less than it was, as would have been sufficient to enable her to avoid the vessel at anchor. She ought not to have gone so fast as not to have been able, by slowing, stopping, and backing, to avoid a collision; and, if the fog was so thick that, at the speed she had, with all the precautions she used, she could not avoid the collision, the conclusion is irresistible that her speed was not that moderate speed in a fog which is required by the well-settled rules of navigation.

There must be a decree for the libellants, with a reference to a commissioner to ascertain and report the damages caused by the collision.

NOTE. This decision was affirmed by the circuit court, on appeal, in August, 1869. [See Case No. 4,102.]